**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **CHERE REXROAT,** | ) | |
|   PO Box 15, | ) | |
|   Nokesville, VA 20182, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civ. Action No.** |
| | ) | |
| **ARCHITECT OF THE U.S. CAPITOL,** | ) | |
|   U.S. Capitol Building SB-15 | ) | |
|   Washington, DC 20515, | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

## PRELIMINARY STATEMENT

1.)     This is an action by Chere Rexroat who has been the Chief Engineer and one of the most senior executives of the Architect of the Capitol ("AOC"), the largest agency in the Legislative Branch of government.  The AOC is charged with preserving and maintaining the landmark and historic buildings, monuments, art, and grounds of the U.S. Capitol campus.

2.)     Rexroat is a female in her late 50's who, since March 29, 2024, has been continuously engaged in on-going protected EEO activity under the Congressional Accountability Act ("CAA"), 2 U.S.C. §§ 1301, *et seq.*, before the Office of Congressional Workplace Rights ("OCWR").  Rexroat initiated that claim, *Chere Brown-Rexroat*, Case Number 24-AC-13 (CV, DA, AG, FL, RP) ("*Rexroat I*"), on March 29, 2024. It is presently in active litigation before a Merits Hearing Officer appointed by the Executive Director of OCWR. [1]

---

[1]     Pursuant to the CAA, the defendant in this case is AOC, as opposed to the named head of AOC.  *Compare* 2 U.S.C. § 1408(b) *with* 42 U.S.C. § 2000e-16(c).

3.)     The CAA affords covered employees of the Legislative Branch the rights and remedies provided by many federal statutes, among them Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2, § 2000e-16 (incorporated by 2 U.S.C. § 1311(a)(1); the Age Discrimination in Employment Act, 29 U.S.C. § 633a (incorporated by 2 U.S.C. § 1311(a)(2); and the Equal Pay Act, 29 U.S.C. § 206(d)(1) (incorporated by 2 U.S.C. § 1313(a)(1); and protects them from reprisal or intimidation for engaging in EEO activity protected under the CAA, 2 U.S.C. § 1317(a); and provides aggrieved covered employees with the right to file a *de novo* civil action in federal court (2 U.S.C. § 1401, § 1408(a)(1)).   As an AOC employee, Rexroat is a "covered employee" entitled to the protections of the CAA, 2 U.S.C. § 1301.

4.)     The head of AOC is the Architect of the Capitol ("the Architect") and is currently Thomas E. Austin, a male approximately in his early 50's.  On or about July 1, 2024, after Rexroat filed her administrative EEO complaint in *Rexroat I* and while it has been proceeding before OCWR, at Austin's direction, AOC posted the position of Deputy Architect of the Capitol ("Deputy Architect") for competition.  The position of Deputy Architect is the career official whose rank is immediately below the Architect, is the alter ego of the Architect, and performs duties that are greater in scope and has greater professional exposure and opportunities for advancement than AOC executives including Rexroat as Chief Engineer.

5.)     Rexroat was and remains among the highest-level officials of AOC just below the Architect and the Deputy Architect.  Rexroat is a Tier 4 senior executive of AOC, a grade equivalent to the Senior Executive Service Level 2, and therefore Rexroat was eligible for reassignment to the Deputy Architect position without competition.

6.)     Because she was not being given consideration for reassignment, on July 11 2024, Rexroat applied for the Deputy position, and was then competitively rated among the best qualified

candidates and afforded a first-round interview. After her interview, Rexroat was advised by the interview panel that she would proceeding to the next step which would be a second interview by Austin, which Austin did not do.

7.) On or about September 19, 2024, Austin announced the selection of Joseph Campbell as Deputy Architect. Cambell is a male who to Rexroat's knowledge is approximately the same age as Rexroat.

8.) Rexroat was markedly and demonstrably more qualified than Campbell at the time Austin selected him. Among other matters, Rexroat had been Acting Architect from February 2023 to February 2024 and Acting Deputy Architect, and performed her duties as Chief Engineer all at the same time. Rexroat was Campell's third-level supervisor during that period and she performed duties well beyond Campell's. Until Campell's selection as Deputy Architect, Rexroat was a higher-grade executive. As Chief Engineer, the breadth of Rexroat's responsibilities covered all AOC buildings and properties on the U.S. Capitol Campus and dwarfed Campell's. In contrast, before Austin selected him, Campell's duties were limited to managing only two properties and the property on which they are situated. Rexroat had also been a member of AOC's C-Suite for over two years before Campbell's selection, while Campbell was not a C-Suite member.

9.) This case seeks redress for defendant's discrimination against Rexroat because of her sex and her sex plus her age; and defendant's retaliation and intimidation toward Rexroat. It arises under the CAA, 2 U.S.C. § 1311(a)(1), § 1311(a)(2), § 1317(a), § 1401(b)(1), and § 1408(a). By way of relief, Rexroat seeks declaratory and equitable relief, including Rexroat's retroactive selection as Deputy; backpay/restoration of annual leave; compensatory and other damages; and an award of her attorneys' fees and costs.

## PARTIES, JURISDICTION, AND VENUE

10.) Plaintiff Chere Rexroat is a female in her late 50's who engaged in protected EEO activity before and during the events that give rise to this case. At all relevant times, Rexroat has been employed by AOC and is a "covered employee" as defined in 2 U.S.C. § 1301 and is entitled to the protections of the CAA.

11.) Thomas E. Austin, a male who on information and belief is in this early 50's, is the Architect of the Capitol and the chief executive officer of AOC, which is the largest agency of the Legislative Branch. Defendant is the Architect of the Capitol pursuant to the CAA, 2 U.S.C. § 1408(b), and is sued in his official capacity only. AOC's mission includes, but is not limited to, managing and maintaining the properties and facilities of the U.S. Capitol, the Supreme Court, and their grounds and historic landmarks.

12.) Jurisdiction of this Court is based on 28 U.S.C. § 1331 and 2 U.S.C. § 1311, § 1401, § 1408(a)(1). Venue lies in this judicial district pursuant to 2 U.S.C. § 1408 (incorporating 42 U.S.C. § 2000e-5(f)(3), because the discriminatory, retaliatory, and intimidating actions of defendant at issue occurred in this judicial district where plaintiff is and was employed when defendant committed its unlawful employment practices

## STATEMENT OF THE CASE

### Background

13.) The overall mission of AOC is to preserve and maintain the landmark and historic buildings, monuments and art and grounds of the Capitol campus, which include the Supreme Court, the Capitol Building, the U.S. Botanical Gardens, the many buildings that house the offices of Members of Congress, and other buildings, which comprise the 18.4 million square feet of facilities and 570 acres of grounds on which these buildings and property are situated. The Capitol

Building itself hosts between 3 million and 5 million visitors each year.  The annual budget of AOC is approximately $1 billion and its multi-year projects to maintain and enhance the foregoing properties and capital renovations can cost over $1 billion.

14.)     As Chief Engineer, Rexroat headed the AOC Office of the Chief Engineer ("OCE").  Since selected for that position in June of 2022, Rexroat has been the senior-most official responsible for AOC's major construction and renovation projects, including maintaining and preserving AOC existing buildings, properties, and monuments; executing architectural and engineering planning and of new buildings, building improvements, monuments, and ancillary properties; and overseeing  project construction, sustainability, and energy management required for supporting AOC's mission.  Rexroat provided expert supervision over other activities of the OCE, including providing central engineering and architectural expertise for all AOC activities, present and planned, relating to AOC properties, historic buildings, landmarks and other properties, and AOC's multi-billion-dollar project portfolio.

15.)     Rexroat was the Acting Architect, serving as the chief executive officer of AOC, while also performing her permanent job duties as and Chief Engineer from February of 2023 to February 2024.  During that time, Rexroat also served as Acting Deputy Architect; Acting Chief Administrative Officer responsible for all administrative and business support for AOC; and Acting Chief Security Officer responsible for the maintenance, care, and operation of the building, grounds, and security requirements of AOC.  Rexroat's duties included actively participating as a voting member on the Congressional Accessibility Services Board and U.S. Capitol Police Board and as *ex officio* members of the United States Capitol Preservation Commission, the President's Advisory Council on Historic Preservation, the National Institute for Conservation of Cultural Property, the

National Capital Memorial Commission, and the Art Advisory Committee to the Washington Metropolitan Area Transit Authority.

16.) Rexroat joined AOC as Deputy Chief Engineer in September of 2018, and was promoted to Chief Engineer in June of 2022. Rexroat's AOC grade as Chief Engineer was Senior Rated ("SR") official, a Tier 4 grade which is the equivalent of a Senior Executive Service ("SES") Level II. Upon becoming Chief Engineer, Rexroat became one of the highest level, senior executives at AOC, known as "C-Suiters," who are the senior-most advisers to the Architect. C-Suiters like Rexroat advise the Architect directly on all facets of AOC activities, attend the highest-level executive meetings at AOC, and are decision-makers in many of AOC's most important actions and decisions. C-Suite members like Rexroat also sit on many AOC committees including its annual bonus committee, which awards performance-based bonuses that are equivalent to SES bonuses and can be over $20,000.

17.) Rexroat is a Registered Architect with over 30 years of experience in numerous roles with the Department of Defense, the U.S. Navy, the U.S. Marine Corps and the U.S. Army. Before joining AOC, Rexroat had an extensive background in construction for the U.S. Marine Corps ("USMC"), including as the Construction Head for USMC Quantico, Virginia and worldwide USMC construction. Rexroat was responsible for USMC's $225 million worldwide construction program; served as the USMC executive level subject matter expert for planning and executing worldwide construction; led construction teams on USMC construction projects and planned construction projects; and supervised construction program managers, contract specialists, designers, and other engineering and architectural personnel.

### Pursuit Of *Rexroat I* And Selection Process For Deputy Architect

18.)     Rexroat initiated the administrative phase of *Rexroat I* by filing a claim with OCWR on March 29, 2024.[2] *Rexroat I* sounded in discrimination based, among other matters, on her sex and age, disparate pay, and retaliation for her opposition to defendant's unlawful employment practices.

19.)     Rexroat's claims in *Rexroat I* as supplemented on April 19, 2024, were reviewed initially by a Preliminary Hearing Office appointed by the OCWR Executive Director in accordance with the CAA, 2 U.S.C. §§ 1402(a)-(b)(7), and OCWR Procedural Rules § 1.02(z).

20.)     Upon the conclusion of the Preliminary Hearing Officer phase on April 29, 2024, Rexroat's claims were referred for mediation pursuant to the CAA, 2 U.S.C. § 1403, and OCWR Procedural Rule 1.02(gg).[3]

21.)     On July 1, 2024, the Deputy Architect position was announced for competition. The Deputy Architect is the senior career AOC official whose rank is immediately below the Architect, is the alter ego of the Architect, and performs duties that are greater in scope and has greater professional exposure and opportunities for advancement than all other AOC executives including Rexroat as Chief Engineer.

22.)     At all times relevant, Rexroat was eligible for non-competitive reassignment as Deputy Architect due to her grade level and wanted to be reassigned into the position.

---

[2]     An initial claim filed with OCWR is the counterpart of a federal sector administrative EEO complaint filed under Title VII and regulations of the U.S. Equal Employment Opportunity Commission.

[3]     Communication in mediation is confidential under OCWR Procedural Rule § 108(c). This Complaint only discloses the timing of mediation as necessary.

23.) Having not been considered for non-competitive reassignment, on July 11, 2024, Rexroat applied for the position competitively. That same day, July 11, 2024, the parties to *Rexroat I* were formally advised that mediation had already ended and that the case automatically went into active litigation before the presiding Merits Hearing Officer appointed by the Executive Director of OCWR several months earlier on May 10, 2024.

24.) Although *Rexroat I* had proceeded to the active litigation stage, the parties continued with mediation and settlement talks on their own.

25.) On July 22, 2024, the Merits Hearing Officer in *Rexroat I* issue a Notice of Initial Conference.

26.) Without having been considered for reassignment, on or before July 29, 2024, Rexroat was competitively rated among the best qualified applicants.

27.) During the Initial Conference on August 15, 2024, the Merits Hearing Officer scheduled a follow-up conference and directed the parties to continue their efforts to resolve *Rexroat I* in the meantime.

28.) At the second status conference in *Rexroat I* on August 29, 2024, counsel for the parties reported that they were continuing their efforts at informal mediation and settlement, which prompted the Merits Hearing Officer to schedule another conference.

29.) During this time, the selection process for the Deputy Architect position was continuing to move forward. Although Rexroat need not have been interviewed and was entitled to be non-competitively reassigned, Rexroat was contacted for an initial interview for the Deputy Architect position that was to take place on Tuesday August 20, 2024. The soonest Rexroat could be interviewed was Thursday August 22, 2024.

30.)    At the conclusion of the first-round interview, the interview panel informed Rexroat that the next step would be a second-round interview with Austin, the selecting official. Austin never interviewed Rexroat.

31.)    On September 5, 2024, Rexroat filed a Notice formally advising the *Rexroat I* Merits Hearing Officer that mediation and settlement discussions had concluded without agreement being reached.

32.)    On September 18, 2024, Austin advised Rexroat that he had selected Campell for the Deputy Architect position.

33.)    On September 19, 2024, the Merits Hearing Officer convened the third status conference in *Rexroat I*.

34.)    At the conference, counsel for Rexroat reported that settlement discussions had not succeeded and that litigation needed to be scheduled.

35.)    On September 24, 2024, the Merits Hearing Officer issued an Order scheduling the hearing in *Rexroat I* to commence on November 5, 2024.

36.)    On October 3, 2024, a fourth status conference before the Merits Hearing Officer in *Rexroat I* was convened.

37.)    On October 4, 2024, a fifth status conference before the Merits Hearing Officer in *Rexroat I* was convened.

38.)    The parties to *Rexroat I* propounded initial written and electronic discovery on October 10, 2024.

39.)    The Merits Hearing Officer's Scheduling Order of November 1, 2024, set a discovery cut-off of January 30, 2025 and a date for beginning briefing of dispositive motions of February 13, 2025.

40.)    On November 5, 2024, the hearing in *Rexroat I* began with opening statements.

## <u>Non-Selection As Deputy Architect</u>

41.)    Austin's selection as Architect of the Capitol was publicly announced no later than May 22, 2024. Austin officially assumed the duties of the position on or before June 24, 2024. Upon or before officially assuming the duties of Architect, Austin was aware that Rexroat was pursuing *Rexroat I*.

42.)    Prior to Austin beginning to serve as Architect, Joseph DiPietro served as Acting Architect. On or shortly after Rexroat filed her original claim in *Rexroat I* on March 29, 2024, DiPietro was aware that Rexroat had initiated the OCWR administrative complaints process, was pursuing it administratively and in active litigation, and was the only official sufficiently senior to serve as the AOC decision-making official in connection with *Rexroat I* at that time. DiPietro is a male, is approximately the same age as Rexroat. On information and belief, DiPietro has not engaged in EEO activity protected under the CAA. Rexroat named DiPietro in *Rexroat I* as a Responsible Management Official for defendant's unlawful employment practices.

43.)    DiPietro stepped down as Acting Architect once Austin assumed the Architect position and thereafter, either directly or indirectly, transmitted knowledge and information to Austin that Rexroat was pursuing *Rexroat I*.

44.)    Austin, as noted earlier, is a male in his early 50's on information and belief. Cambell is a male who, to Rexroat's knowledge is approximately the same age as Rexroat.

45.)    At all times relevant, Austin knew that Rexroat was markedly and demonstrably more qualified than Campbell for the position of Deputy Architect.

46.)     Rexroat had been Acting Architect for a full year and exercised the full executive powers of a permanent Architect, including presiding over C-Suite meetings and decision-making. At the same time, Rexroat was also performing the duties of her position of Chief Engineer and other duties of Acting Deputy Architect, Acting Chief Administrative Officer, and Acting Chief Security Officer.

47.)     During that time, Rexroat was Campbell's third level supervisor.

48.)     Further, Rexroat's permanent portfolio as Chief Engineer was exceptionally broad and spanned the entire range of AOC activities over all the buildings and properties under the AOC's jurisdiction as well as planning projects for future expansion of AOC's inventory that would then fall within Rexroat's role as Chief Engineer.  As Chief Engineer, Rexroat was responsible for approximately 17 buildings on the Capitol Campus and over 18 million square feet of Capitol Campus real property.

49.)     Campbell's portfolio was only a fraction of Rexroat's and of far less importance to AOC.  Campbell held a lower-graded position than Rexroat and the highest position Campbell had attained at AOC on a permanent basis was Facilities Manager for the Supreme Court and the Thurgood Marshall Federal Judiciary Center buildings and managed only approximately one million square feet of the real property on which those two buildings are situated.  Campbell was not a C-Suite member in contrast to Rexroat who had been a C-Suite member for over two years. Campbell had never served at AOC in a position with duties as extensive as Acting Architect or Acting Deputy Architect or served in multiple senior executive roles simultaneously, which Rexroat had done for a year while serving as Acting Architect.  Rather, Campbell was an engineer who occupied a lower position of far less responsibility and professional exposure than Rexroat and

answered to a C-Suite member at Rexroat's level.  Rexroat was Campbell's third level supervisor when she was Acting Architect.

50.) On September 18, 2024, Austin spoke with Rexroat to discuss Campbell's selection as Deputy Architect.  In sum and substance, at the meeting Austin stated that he passed over Rexroat because he allegedly knew enough about construction and engineering relating to AOC without having Rexroat as Deputy and selected Campbell allegedly because he could complement Austin's supposed experience better than Rexroat.

51.) Austin's statements were pretexts.

52.) Austin had far less experience as an engineer than Rexroat, had never performed work on an on-going basis of equivalent difficulty and responsibility as Rexroat, and his only work relating to AOC was as a contract employee of a private contractor on the renewal of the Cannon House Office Building for approximately six months when Rexroat was Chief Engineer with executive responsibilities over that entire project.  The Cannon renewal was just one of many similar or greater projects in Rexroat's portfolio as Chief Engineer, who had the highest executive responsibility over all of the major projects within the AOC portfolio other than the Architect.

53.) As alleged above, Campbell's skillset and responsibilities were far narrower than Rexroat's and he had never attained the position of Acting Architect or Acting Deputy Architect or on a permanent basis.

54.) In contrast to Rexroat, Campbell had never been responsible for executing and planning all of AOC activities as described earlier and had only limited experience interacting with Members of Congress, Congressional aides, other Congressional stakeholders, and major media outlets.

55.)     On October 10, 2024, Austin met with Rexroat in his office allegedly for a 90-day review since his on-boarding in June 2024.  Austin had DiPietro sit in at the meeting, but he did not speak.

56.)     The meeting between Austin and Rexroat lasted approximately 30 minutes.  Austin talked belligerently to, and berated Rexroat on a number of false grounds including, but not limited to, falsely stating that Rexroat was not participating often enough in in-person meetings and that she was not supporting him because she was absent from the office.  Austin's claims were pretexts.

57.)     To begin, Austin was responsible for approving Rexroat's leave since he began as Architect and had approved all leave requested by her since then.  Austin knew that Rexroat had an approved Reasonable Accommodation to telework fulltime except when supervisory advance notice was given for required on site meetings.  He was aware Rexroat was actively engaged in the process of renewing that RA; and had been on a combination of approved sick and annual leave when the deaths of two family members out of town coincided with medical matters Rexroat needed to attend to.  Prior to his meeting with Rexroat, Austin never questioned or denied any of Rexroat's leave requests; counseled Rexroat about taking excessive leave; asked Rexroat to attend meetings in-person at the AOC facility instead of participating by Teams; or advised or had any cause to advise Rexroat that she was not actively supporting him.

58.)     At all times since Austin began as Architect, Rexroat performed her duties as Chief Engineer in an exemplary manner; only delegated matters to her staff as she had been doing previously; actively supported and contributed to Austin's performance and success as newly appointed Architect; and had continued to perform her duties as Chief Engineer as she had done since her appointment in June of 2022 and in her yearlong appointment as Acting Architect, which continued until just several months before Austin's selection.

59.)    As a result of Austin's beratement of Rexroat during their meeting on October 10, 2024, Austin's extreme pretextual dissatisfaction with Rexroat's performance and use of approved leave and fulltime reasonable accommodation, and Austin's failure to consider Rexroat for reassignment to or selection for the Deputy position, Rexroat is actively seeking employment outside of AOC.

### Continued Proceedings In Rexroat *I*

60.)    At the fourth *Rexroat I* status conference on October 3, 2024, Rexroat's counsel advised the Merits Hearing Officer that he was preparing a proposed litigation schedule and AOC counsel responded that the differences between the two sides in terms of settlement were "extensive, very extensive."

61.)    *Rexroat I* remains in active litigation as of the filing of this Complaint.

### EXHAUSTION OF REMEDIES

62.)    Rexroat timely initiated the OCWR administrative complaints process concerning the employment actions that are at issue in this case by filing her initial claim on September 27, 2024, amending that claim on October 11, 2024; and participating in the Preliminary Review Process specified in the Congressional Accountability Act, 2 U.S.C. §1402a.

63.)    By these actions and others, Rexroat subsequently took all other actions required of her by law, regulation, and OCWR Procedural Rules including, but not limited to, participating in the Preliminary Review Process specified in the Congressional Accountability Act, 2 U.S.C. §1402a, and OCWR Procedural Rule § 4.08.

64.)    Rexroat timely initiated this suit on December 3, 2024, in accordance with OCWR Procedural Rule § 4.05 and the Congressional Accountability Act, 2 U.S.C. § 1311, § 1408.

**COUNT I**
**(<u>Retaliation</u>)**

65.)    Rexroat repeats the allegations contained in paragraphs 1 through 65 above, as though fully set forth here.

66.)    At all relevant times, Rexroat has been the Chief Engineer employed by the Architect of the Capitol ("AOC") and the head of the AOC Office of the Chief Engineer ("OCE").

67.)    Rexroat is a "covered employee" as that term is defined in the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1301.

68.)    Beginning on March 29, 2024, Rexroat filed an Initial Claim with AOC's Office of Congressional Workplace Rights ("OCWR") in accordance with OCWR Procedure Rules §§ 4.01 *et seq*.  That claim is denominated *Chere Brown-Rexroat*, Case Number 24-AC-13 (CV, DA, AG, FL, RP) ("*Rexroat I*").

69.)    Since filing her Initial Claim in *Rexroat I*, Rexroat has actively pursued her rights under the CAA, 2 U.S.C. § 1311, § 1313, § 1317.

70.)    Rexroat's actions in pursuit of *Rexroat I* have included, but have not been limited to, engaging in the administrative claims process, the Preliminary Review Process, and mediation pursuant to the CAA, 2 U.S.C. § 1402a, § 1403, and OCWR Procedure Rules §§ 4.01 *et seq*.

71.)    Rexroat's actions in pursuit of *Rexroat I* have also included, but have not been limited to, engaging in active litigation before a Merits Hearing Office pursuant to the CAA, 2 U.S.C. § 1405.

72.)    By the foregoing actions among others, Rexroat has "initiated proceedings, made a charge" and "participated in any manner in a hearing of other proceeding" as those terms are defined under the CAA, 2 U.S.C. § 1317 ("OCWR protected EEO activity").

73.) Rexroat has been continuously engaged in OCWR protected EEO activity since March 29, 2024 through and continuing beyond the filing of this Complaint.

74.) On or about July 1, 2024, at the direction of Architect of the Capitol ("the Architect") Thomas Austin, AOC posted the position of Deputy Architect of the Capitol ("Deputy Architect") for competition. Austin was the selecting official for that position.

75.) The Deputy Architect is the senior career executive of AOC and second only to the Architect in terms of duties, responsibilities, and professional advancement and exposure. The Deputy Architect is senior in those terms and others to the Chief Engineer.

76.) Because Rexroat's AOC grade level is Tier 4, which is equivalent to Senior Executive Service Level II, Rexroat was eligible for reassignment to the Deputy Architect position without competition.

77.) Austin did not reassign Rexroat non-competitively into the Deputy Architect position. Nor did Austin consider Rexroat for non-competitive reassignment into the Deputy Architect position.

78.) By not reassigning Rexroat into the Deputy Architect position non-competitively, Austin caused harm to Rexroat's career, career advancement, and opportunities for professional exposure.

79.) Because she was not being given consideration for reassignment, on July 11 2024, Rexroat applied for the Deputy position, and was then competitively rated among the best qualified candidates and afforded a first-round interview for the position on August 22, 2024.

80.) Rexroat was advised by the interview panel that she would be interviewed by Austin.

81.) Austin did not interview Rexroat for the position.

82.)    On or before September 18, 2024, while *Rexroat I* was in active litigation, Austin selected Joseph Campell for the Deputy Architect position.

83.)    Before selecting Campbell, Austin knew that Rexroat had been engaging in OCWR protected EEO activity, *i.e.* filing and pursuing *Rexroat I.*

84.)    Rexroat was markedly and demonstrably more qualified than Campbell for the position of Deputy Architect, as Austin knew.

85.)    Among other matters, Rexroat had been Acting Architect for a full year and exercised the full executive powers of a permanent Architect, including presiding over C-Suite meetings and decision-making.

86.)    At the same time, Rexroat was also performing the duties of her position of Chief Engineer and the other duties of Acting Deputy Architect, Acting Chief Administrative Officer, and Acting Chief Security Officer.

87.)    During that time, Rexroat was Campbell's third level supervisor.

88.)    Rexroat's permanent portfolio as Chief Engineer spanned the entire range of AOC activities over all of the buildings and properties under the AOC's jurisdiction as well as planning projects for future expansion of AOC's inventory that would then fall within Rexroat's role as Chief Engineer.

89.)    Campbell's portfolio was only a fraction of Rexroat's and of far less importance to AOC.

90.)    Rexroat had been a C-Suite member for over two years before Campbell was selected.

91.)    Prior to his selection, Campbell had never been a C-Suite member and was an AOC Tier 3, a lower grade than Rexroat.

92.)     On September 18, 2024, Austin spoke with Rexroat to discuss Campbell's selection as Deputy Architect.  In sum and substance, Austin stated that he passed over Rexroat because he allegedly knew enough about construction and engineering without having Rexroat as Deputy and selected Campbell allegedly because he could complement Austin's supposed experience better than Rexroat.  Austin statements to Rexroat were pretexts.

93.)     Austin had far less experience as an engineer than Rexroat, had never performed work on an on-going basis of equivalent difficulty and responsibility as Rexroat, and his only work relating to AOC was as a contract employee of a private contractor on the renewal of the Cannon House Office Building for approximately six months when Rexroat was Chief Engineer with executive responsibilities over that project.

94.)     Campbell's background and experience before being selected Deputy Architect were far narrower than Rexroat's and he had never attained the position of Architect or Deputy Architect on a permanent or acting basis.

95.)     Prior to his selection Campbell had never been responsible for executing and planning all of AOC activities and had only limited experience interacting with Members of Congress, Congressional aides, other Congressional stakeholders, and major media outlets.

96.)     On October 10, 2024, Austin met with Rexroat in his office allegedly for a 90-day review of her performance since his on-boarding in June 2024.

97.)     During the meeting, Austin talked belligerently to and berated Rexroat on a number of false grounds including, but not limited to, falsely stating that Rexroat was not participating in enough in-person meetings and that she was not supporting him because she was absent from the office.

98.)    Austin was responsible for approving Rexroat's leave since he began as Architect and had approved all leave requested by her since then.  Austin knew that Rexroat had an approved Reasonable Accommodation to telework fulltime except when supervisory advance notice was given for required on-site meetings; that Rexroat was actively engaged in the process of renewing that RA; and that Rexroat had been on a combination of approved sick and annual leave when the deaths of two family members out of town coincided with medical matters Rexroat needed to attend to.

99.)    Prior to his meeting with Rexroat, Austin never questioned or denied any of Rexroat's leave requests; counseled Rexroat about taking excessive leave; asked Rexroat to attend meetings in-person at the AOC facility instead of participating by Teams; or advised or had any cause to advise Rexroat that she was not actively supporting him.

100.)    At all times since Austin began as Architect, Rexroat performed her duties as Chief Engineer in an exemplary manner; only delegated matters to her staff as she had been doing previously; actively supported and contributed to Austin's performance and success as newly appointed Architect; and had continued to perform her duties as Chief Engineer as she had done since her appointment in June of 2022 and in her yearlong appointment as Acting Architect, which continued until just several months before Austin's selection.

101.)    As a result of Austin's beratement of Rexroat during their meeting on October 10, 2024, extreme pretextual dissatisfaction with Rexroat's performance and use of approved leave and fulltime Reasonable Accommodation, and failure to consider Rexroat for reassignment to or selection for the Deputy position, Rexroat began using her accrued annual leave on October 16th, 2024, while actively seeking employment outside of AOC.

102.)    Defendant took one or more of the following materially adverse actions against Rexroat that would likely dissuade a reasonable worker from making or supporting a charge of discrimination:

    a.) Failing to consider reassigning Rexroat non-competitively to the position of Deputy Architect.

    b.) Failing to reassign Rexroat non-competitively to the position of Deputy Architect.

    c.) Failing to select Rexroat for promotion to the Deputy Architect position and instead selecting Campbell.

    d.) Denying Rexroat the opportunity to fully and fairly compete for the Deputy Architect position.

103.)    Defendant took one or more of the foregoing materially adverse actions because Rexroat had been and was contemporaneously engaged in OCWR protected EEO activity.

104.)     Defendant took one or more of the foregoing materially adverse actions in order to retaliate against Rexroat in violation of the CAA, 2 U.S.C. § 1317.

105.)    Defendant's violation of Rexroat's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, and loss of enjoyment of life; material injury to her career; and other losses.

## COUNT II
## (<u>Intimidation</u>)

106.)    Rexroat repeats the allegations contained in paragraphs 1 through 106 above, as though fully set forth here.

107.)    At all relevant times, Rexroat has been the Chief Engineer employed by the Architect of the Capitol ("AOC") and the head of the AOC Office of the Chief Engineer ("OCE").

108.)    Rexroat is a "covered employee" as that term is defined in the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1301.

109.)    Beginning on March 29, 2024, Rexroat filed an Initial Claim in *Rexroat I* with AOC's Office of Congressional Workplace Rights ("OCWR") in accordance with OCWR Procedure Rules §§ 4.01 *et seq*.

110.)    Since filing her Initial Claim in *Rexroat I*, Rexroat has actively pursued her rights under the CAA, 2 U.S.C. § 1311, § 1313, § 1317.

111.)    Rexroat's actions in pursuit of *Rexroat I* have included, but have not been limited to, engaging in the administrative claims process, the Preliminary Review Process, and mediation pursuant to the CAA, 2 U.S.C. § 1402a, § 1403, and OCWR Procedure Rules §§ 4.01 *et seq*.

112.)    Rexroat's actions in pursuit of *Rexroat I* have also included, but have not been limited to, engaging in active litigation before a Merits Hearing Office pursuant to the CAA, 2 U.S.C. § 1405.

113.)    By the foregoing actions among others, Rexroat has "initiated proceedings, made a charge" and "participated in any manner in a hearing of other proceeding" as those terms are defined under the CAA, 2 U.S.C. § 1317 ("OCWR protected EEO activity"). Rexroat has been continuously engaged in OCWR protected EEO activity since March 29, 2024 through and continuing beyond the filing of this Complaint.

114.)   On or about July 1, 2024, at the direction of Architect of the Capitol ("the Architect") Thomas Austin, AOC posted the position of Deputy Architect of the Capitol ("Deputy Architect") for competition.  Austin was the selecting official for that position.

115.)   The Deputy Architect is the senior career executive of AOC and second only to the Architect in terms of duties, responsibilities, and professional advancement and exposure.  The Deputy Architect is senior in those terms and others to the Chief Engineer.

116.)   Because Rexroat's AOC grade level is Tier 4, which is equivalent to Senior Executive Service ("SES") Level II, Rexroat was eligible for reassignment to the Deputy Architect position without competition.

117.)   Austin did not reassign Rexroat non-competitively into the Deputy Architect position.  Nor did Austin consider Rexroat for non-competitive reassignment into the Deputy Architect position.

118.)   By not reassigning Rexroat into the Deputy Architect position non-competitively, Austin caused harm to Rexroat's career, career advancement, and opportunities for professional exposure.

119.)   Because she was not being given consideration for reassignment, on July 11 2024, Rexroat applied for the Deputy position, and was then competitively rated among the best qualified candidates and afforded a first-round interview for the position on August 22, 2024.

120.)   Rexroat was advised by the interview panel that she would be interviewed by Austin.

121.)   Austin did not interview Rexroat for the position.

122.)   On or before September 18, 2024, while *Rexroat I* was in active litigation, Austin selected Joseph Campbell for the Deputy Architect position.

123.)    Before selecting Campbell, Austin knew that Rexroat had been engaging in OCWR protected EEO activity, *i.e.* filing and pursuing *Rexroat I.*

124.)    Rexroat was markedly and demonstrably more qualified than Campbell for the position of Deputy Architect, as Austin knew.

125.)    Among other matters, Rexroat had been Acting Architect for a full year and exercised the full executive powers of a permanent Architect, including presiding over C-Suite meetings and decision-making.

126.)    At the same time, Rexroat was also performing the duties of her position of Chief Engineer and the other duties of Acting Deputy Architect, Acting Chief Administrative Officer, and Acting Chief Security Officer.

127.)    During that time, Rexroat was Campbell's third level supervisor.

128.)    Rexroat's permanent portfolio as Chief Engineer spanned the entire range of AOC activities over all of the buildings and properties under the AOC's jurisdiction as well as planning projects for future expansion of AOC's inventory that would then fall within Rexroat's role as Chief Engineer.

129.)    Campbell's portfolio was only a fraction of Rexroat's and of far less importance to AOC.

130.)    Rexroat had been a C-Suite member for over two years before Campbell was selected.

131.)    Prior to his selection, Campbell had never been a C-Suite member and was an AOC Tier 3, a lower grade than Rexroat.

132.)    On September 18, 2024, Austin spoke with Rexroat to discuss Campbell's selection as Deputy Architect.  In sum and substance, Austin stated that he passed over Rexroat because he

allegedly knew enough about construction and engineering without having Rexroat as Deputy and selected Campbell allegedly because he could complement Austin's supposed experience better than Rexroat.  Austin statements to Rexroat were pretexts.

133.)    Austin had far less experience as an engineer than Rexroat, had never performed work on an on-going basis of equivalent difficulty and responsibility as Rexroat, and his only work relating to AOC was as a contract employee of a private contractor on the renewal of the Cannon House Office Building for approximately six months when Rexroat was Chief Engineer with executive responsibilities over that project.

134.)    Campbell's background and experience before being selected Deputy Architect were far narrower than Rexroat's and he had never attained the position of Architect or Deputy Architect on a permanent or acting basis.

135.)    In contrast to Rexroat, prior to his selection Campbell had never been responsible for executing and planning all of AOC activities and had only limited experience interacting with Members of Congress, Congressional aides, other Congressional stakeholders, and major media outlets.

136.)    On October 10, 2024, Austin met with Rexroat in his office allegedly for a review of her performance since his on-boarding in June 2024.

137.)    During the meeting, Austin talked belligerently to and berated Rexroat on a number of false grounds including, but not limited to, falsely stating that Rexroat was not participating in enough in-person meetings and that she was not supporting him because she was absent from the office.

138.)    Austin was responsible for approving Rexroat's leave since he began as Architect and had approved all leave requested by her since then.  Austin knew that Rexroat had an approved

Reasonable Accommodation to telework fulltime except when supervisory advance notice was given for required on site meetings; that Rexroat was actively engaged in the process of renewing that RA; and that Rexroat had been on a combination of approved sick and annual leave when the deaths of two family members out of town coincided with medical matters Rexroat needed to attend to.

139.)    Prior to his meeting with Rexroat, Austin never questioned or denied any of Rexroat's leave requests; counseled Rexroat t about taking excessive leave; asked Rexroat to attend meetings in-person at the AOC facility instead of participating by Teams; or advised or had any cause to advise Rexroat that she was not actively supporting him.

140.)    At all times since Austin began as Architect, Rexroat performed her duties as Chief Engineer in an exemplary manner; only delegated matters to her staff as she had been doing previously; actively supported and contributed to Austin's performance and success as newly appointed Architect; and had continued to perform her duties as Chief Engineer as she had done since her appointment in June of 2022 and in her yearlong appointment as Acting Architect, which continued until just several months before Austin's selection.

141.)    As result Austin's beratement of Rexroat during their meeting on October 10, 2024, extreme pretextual dissatisfaction with Rexroat's performance and use of approved leave and fulltime Reasonable Accommodation, and failure to consider Rexroat for reassignment to or selection for the Deputy position, Rexroat began using her accrued annual leave on October 16, 2024, while actively seeking employment outside of AOC.

142.)    Defendant took one or more of the following actions in order to intimidate Rexroat because Rexroat had been and was contemporaneously engaged in OCWR protected EEO activity in *Rexroat I*:

a.) Failing to consider reassigning Rexroat non-competitively to the position of Deputy Architect.

b.) Failing to reassign Rexroat non-competitively to the position of Deputy Architect.

c.) Denying Rexroat the opportunity to fully and fairly compete for the Deputy Architect position.

d.) Failing to select Rexroat for the Deputy Architect position and instead selecting Campbell.

e.) Falsely accusing Rexroat of various acts of misconduct and non-performance including misusing leave, not performing her job duties since Austin became the Architect, not supporting Austin since he was appointed, and being absent from work extensively despite being on approved leave and having a Reasonable Accommodation for fulltime telework absent advance notice that she was needed in-person at the AOC facility.

143.)  Defendant's actions caused and would have continued to cause harm and objectively tangible harm to Rexroat's career, career advancement, and professional exposure. Based on the foregoing actions and others alleged in this Complaint and their escalation during *Rexroat I,* Rexroat reasonably concluded that defendant had brought an end to her effectiveness and career at AOC as Chief Engineer, an AOC executive, an AOC C-Suite member, and future roles in permanent and acting positions above Chief Engineer.

144.)  Rexroat has been actively seeking employment outside of AOC since October 10, 2024; has notified the AOC HR department that she would be retiring or resigning from AOC effective December 31, 2024; and is now using her accumulated annual leave in order to insulate herself from further harm to her career and career opportunities.

145.) By the time her retirement or resignation becomes effective, Rexroat will have used all of her accumulated annual leave of 396 hours which has an approximate value of $41,108.76.

146.) Defendant took one or more of the foregoing acts in order to intimidate Rexroat because of her OCWR protected EEO activity in violation of the CAA, 2 U.S.C. § 1317.

147.) Defendant's violation of Rexroat's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, and loss of enjoyment of life; material injury to her career; and other losses including, but not limited to, Rexroat's use of her accumulated annual leave.

## COUNT III
### (Sex Discrimination)

148.) Rexroat repeats the allegations contained in paragraphs 1 through 148 above, as though fully set forth here.

149.) At all relevant times, Rexroat has been the Chief Engineer employed by the Architect of the Capitol ("AOC") and the head of the AOC Office of the Chief Engineer ("OCE").

150.) Rexroat is a female.

151.) Rexroat is a "covered employee" as that term is defined in the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1301.

152.) On or about July 1, 2024, at the direction of Architect of the Capitol ("the Architect") Thomas Austin, a male, AOC posted the position of Deputy Architect of the Capitol ("Deputy Architect") for competition. Austin was the selecting official for that position.

153.) The Deputy Architect is the senior career executive of AOC and second only to the Architect in terms of duties, responsibilities, and professional advancement and exposure. The Deputy Architect is senior in those terms and others to the Chief Engineer.

154.)   Because of Rexroat's AOC Tier 4 grade level, which is equivalent to Senior Executive Service ("SES") Level II, Rexroat was eligible for reassignment to the Deputy Architect position without competition.

155.)   Austin did not reassign Rexroat non-competitively into the Deputy Architect position.  Nor did Austin consider Rexroat for non-competitive reassignment into the Deputy Architect position.

156.)   By not reassigning Rexroat into the Deputy Architect position non-competitively, Austin caused harm to Rexroat's career, career advancement, and opportunities for professional exposure.

157.)   Because she was not being given consideration for reassignment, on July 11 2024, Rexroat applied for the Deputy position, and was then competitively rated among the best qualified candidates and afforded a first-round interview for the position on August 22, 2024.

158.)   Rexroat was advised by the interview panel that she would be interviewed by Austin.

159.)   Austin did not interview Rexroat for the position.

160.)   On or before September 18, 2024, Austin selected Joseph Campell, a male, for the Deputy Architect position.

161.)   Rexroat was markedly and demonstrably more qualified than Campell for the position of Deputy Architect, as Austin knew.

162.)   Rexroat had been Acting Architect for a full year and exercised the full executive powers of a permanent Architect, including presiding over C-Suite meetings and decision-making.

163.)    At the same time, Rexroat was also performing the duties of her position of Chief Engineer and other duties of Acting Deputy Architect, Acting Chief Administrative Officer, and Acting Chief Security Officer.

164.)    During that time, Rexroat was Campbell's third level supervisor.

165.)    Rexroat's permanent portfolio as Chief Engineer spanned the entire range of AOC activities over all of the buildings and properties under the AOC's jurisdiction as well as planning projects for future expansion of AOC's inventory that would then fall within Rexroat's role as Chief Engineer.

166.)    Campbell's portfolio was only a fraction of Rexroat's and of far less importance to AOC.

167.)    Rexroat had been a C-Suite member for over two years before Campbell was selected.

168.)    Prior to his selection, Campbell had never been a C-Suite member and was an AOC Tier 3, a lower grade than Rexroat.

169.)    On September 18, 2024, Austin spoke with Rexroat to discuss Campbell's selection as Deputy Architect.  In sum and substance, Austin stated that he passed over Rexroat because he allegedly knew enough about construction and engineering without having Rexroat as Deputy and selected Campbell allegedly because he could complement Austin's supposed experience better than Rexroat.  Austin statements to Rexroat were pretexts.

170.)    Austin had far less experience as an engineer than Rexroat, had never performed work on an on-going basis of equivalent difficulty and responsibility as Rexroat, and his only work relating to AOC was as a contract employee of a private contractor on the renewal of the Cannon

House Office Building for approximately six months when Rexroat was Chief Engineer with executive responsibilities over that project.

171.)    Campbell's background and experience before being selected Deputy Architect were far narrower than Rexroat's and he had never attained the position of Architect or Deputy Architect on a permanent or acting basis.

172.)    Prior to his selection Campbell had never been responsible for executing and planning all of AOC activities and had only limited experience interacting with Members of Congress, Congressional aides, other Congressional stakeholders, and major media outlets.

173.)    On October 10, 2024, Austin met with Rexroat in his office allegedly for a review of her performance since his on-boarding in June 2024.

174.)    During the meeting, Austin talked belligerently to and berated Rexroat on a number of false grounds including, but not limited to, falsely stating that Rexroat was not participating enough in in-person meetings and that she was not supporting him because she was absent from the office.

175.)    Austin was responsible for approving Rexroat's leave since he began as Architect and had approved all leave requested by her since then.  Austin knew that Rexroat had an approved Reasonable Accommodation to telework fulltime except when supervisory advance notice was given for required on site meetings; that Rexroat was actively engaged in the process of renewing that RA; and that Rexroat had been on a combination of approved sick and annual leave when the deaths of two family members out of town coincided with medical matters Rexroat needed to attend to.

176.)    Prior to his meeting with Rexroat, Austin never questioned or denied any of Rexroat's leave requests; counseled Rexroat t about taking excessive leave; asked Rexroat to

attend meetings in-person at the AOC facility instead of participating by Teams; or advised or had any cause to advise Rexroat that she was not actively supporting him.

177.)    At all times since Austin began as Architect, Rexroat performed her duties as Chief Engineer in an exemplary manner; only delegated matters to her staff as she had been doing previously; actively supported and contributed to Austin's performance and success as newly appointed Architect; and had continued to perform her duties as Chief Engineer as she had done since her appointment in June of 2022 and in her yearlong appointment as Acting Architect, which continued until just several months before Austin's selection.

178.)    As result of Austin's beratement of Rexroat during their meeting on October 10, 2024, extreme pretextual dissatisfaction with Rexroat's performance and use of approved leave and fulltime Reasonable Accommodation, and failure to consider Rexroat for reassignment to or selection for the Deputy position, Rexroat began using her accrued annual leave on October 16, 2024, while actively seeking employment outside of AOC.

179.)    Defendant took one or more of the following adverse actions toward Rexroat because she is female.

    a.) Failing to consider reassigning Rexroat non-competitively to the position of Deputy Architect.

    b.) Failing to reassign Rexroat non-competitively to the position of Deputy Architect.

    c.) Failing to select Rexroat for the Deputy Architect position and instead selecting Campbell.

    d.) Denying Rexroat the opportunity to fully and fairly compete for the Deputy Architect position.

180.)    Defendant took one or more of the foregoing acts in order to discriminate against Rexroat because she is female in violation of the CAA, 2 U.S.C. § 1311.

181.)    Defendant's violation of Rexroat's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, and loss of enjoyment of life; material injury to her career; and other losses including, but not limited to, Rexroat's use of her accumulated annual leave.

### COUNT IV
### (<u>Sex Plus Age Discrimination</u>)

182.)    Rexroat repeats the allegations contained in paragraphs 1 through 182 above, as though fully set forth here.

183.)    At all relevant times, Rexroat has been the Chief Engineer employed by the Architect of the Capitol ("AOC") and the head of the AOC Office of the Chief Engineer ("OCE").

184.)    Rexroat is a female in her late 50's.

185.)    Rexroat is a "covered employee" as that term is defined in the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1301.

186.)    On or about July 1, 2024, at the direction of Architect of the Capitol ("the Architect") Thomas Austin, a male approximately in his early 50's, AOC posted the position of Deputy Architect of the Capitol ("Deputy Architect") for competition.  Austin was the selecting official for that position.

187.)    The Deputy Architect is the senior career executive of AOC and second only to the Architect in terms of duties, responsibilities, and professional advancement and exposure.  The Deputy Architect is senior in those terms and others to the Chief Engineer.

188.)   Because of Rexroat's AOC tier 4 grade level, which is equivalent to Senior Executive Service ("SES") Level II, Rexroat was eligible for non-competitive reassignment to the Deputy Architect position.

189.)   Austin did not reassign Rexroat non-competitively into the Deputy Architect position.   Nor did Austin consider Rexroat for non-competitive reassignment into the Deputy Architect position.

190.)   By not reassigning Rexroat into the Deputy Architect position non-competitively, Austin caused harm to Rexroat's career, career advancement, and opportunities for professional exposure.

191.)   Because she was not being given consideration for reassignment, on July 11 2024, Rexroat applied for the Deputy position, and was then competitively rated among the best qualified candidates and afforded a first-round interview for the position on August 22, 2024.

192.)   Rexroat was advised by the interview panel that she would be interviewed by Austin.

193.)   Austin did not interview Rexroat for the position.

194.)   On or before September 18, 2024, Austin selected Joseph Campell, a male who on information and belief is approximately the same age as Rexroat, for the Deputy Architect position.

195.)   Rexroat was markedly and demonstrably more qualified than Campbell for the position of Deputy Architect, as Austin knew.

196.)   Rexroat had been Acting Architect for a full year and exercised the full executive powers of a permanent Architect, including presiding over C-Suite meetings and decision-making.

197.)    At the same time, Rexroat was also performing the duties of her position of Chief Engineer and other duties of Acting Deputy Architect, Acting Chief Administrative Officer, and Acting Chief Security Officer.

198.)    During that time, Rexroat was Campbell's third level supervisor.

199.)    Rexroat's permanent portfolio as Chief Engineer spanned the entire range of AOC activities over all of the buildings and properties under the AOC's jurisdiction as well as planning projects for future expansion of AOC's inventory that would then fall within Rexroat's role as Chief Engineer.

200.)    Campbell's portfolio was only a fraction of Rexroat's and of far less importance to AOC.

201.)    Rexroat had been a C-Suite member for over two years before Campbell was selected.

202.)    Prior to his selection, Campbell had never been a C-Suite member and was an AOC Tier 3, a lower grade than Rexroat.

203.)    On September 18, 2024, Austin spoke with Rexroat to discuss Campbell's selection as Deputy Architect.  In sum and substance, Austin stated that he passed over Rexroat because he allegedly knew enough about construction and engineering without having Rexroat as Deputy and selected Campbell allegedly because he could complement Austin's supposed experience better than Rexroat.  Austin statements to Rexroat were pretexts.

204.)    Austin had far less experience as an engineer than Rexroat, had never performed work on an on-going basis of equivalent difficulty and responsibility as Rexroat, and his only work relating to AOC was as a contract employee of a private contractor on the renewal of the Cannon

House Office Building for approximately six months when Rexroat was Chief Engineer with executive responsibilities over that project.

205.)    Campbell's background and experience before being selected Deputy Architect were far narrower than Rexroat's and he had never attained the position of Architect or Deputy Architect on a permanent or acting basis.

206.)    Prior to his selection Campbell had never been responsible for executing and planning all of AOC activities and had only limited experience interacting with Members of Congress, Congressional aides, other Congressional stakeholders, and major media outlets.

207.)    On October 10, 2024, Austin met with Rexroat in his office allegedly for a review of her performance since his on-boarding in June 2024.

208.)    During the meeting, Austin talked belligerently to and berated Rexroat on a number of false grounds including, but not limited to, falsely stating that Rexroat was not participating in enough in-person meetings and that she was not supporting him because she was absent from the office.

209.)    Austin was responsible for approving Rexroat's leave since he began as Architect and had approved all leave requested by her since then.  Austin knew that Rexroat had an approved Reasonable Accommodation to telework fulltime except when supervisory advance notice was given for required on site meetings; that Rexroat was actively engaged in the process of renewing that RA; and that Rexroat had been on a combination of approved sick and annual leave when the deaths of two family members out of town coincided with medical matters Rexroat needed to attend to.

210.)    Prior to his meeting with Rexroat, Austin never questioned or denied any of Rexroat's leave requests; counseled Rexroat about taking excessive leave; asked Rexroat to attend

meetings in-person at the AOC facility instead of participating by Teams; or advised or had any cause to advise Rexroat that she was not actively supporting him.

211.)    At all times since Austin began as Architect, Rexroat performed her duties as Chief Engineer in an exemplary manner; only delegated matters to her staff as she had been doing previously; actively supported and contributed to Austin's performance and success as newly appointed Architect; and had continued to perform her duties as Chief Engineer as she had done since her appointment in June of 2022 and in her yearlong appointment as Acting Architect, which continued until just several months before Austin's selection.

212.)    As result of Austin's beratement of Rexroat during their meeting on October 10, 2024, extreme pretextual dissatisfaction with Rexroat's performance and use of approved leave and fulltime Reasonable Accommodation, and failure to consider Rexroat for reassignment to or selection for the Deputy position, Rexroat began using her accrued annual leave on October 16, 2024, while actively seeking employment outside of AOC.

213.)    Defendant took one or more of the following adverse actions toward Rexroat because she is a female in her late 50's and in defendant's pretextual discriminatory view, less capable than a male of similar age and less deserving of promotion.

    a.) Failing to consider reassigning Rexroat non-competitively to the position of Deputy Architect.

    b.) Failing to reassign Rexroat non-competitively to the position of Deputy Architect.

    c.) Failing to select Rexroat for the Deputy Architect position and instead selecting Campbell.

    d.) Denying Rexroat the opportunity to fully and fairly compete for the Deputy Architect position.

214.)   Defendant took one or more the foregoing acts in order to discriminate against Rexroat because she is a female in her late 50's in violation of the CAA, 2 U.S.C. § 1311.

215.)   Defendant's violation of Rexroat's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety,  and loss of enjoyment of life; material injury to her career; and other losses including, but not limited to, Rexroat's use of her accumulated annual leave.

## PRAYER FOR RELIEF

Wherefore, plaintiff Chere Rexroat respectfully requests that the Court enter judgment in her favor and award her the following relief.

A.    An Order declaring that defendant violated plaintiff's rights under the Congressional Accountability Act, 2 U.S.C. §§ 1301, *et seq.*.

B.    Appointment to the position of Deputy Architect of the Capitol retroactive to Austin's appointment of Campbell.

C.    Record correction.

D.    Leave restoration or payment for use of accumulated annual leave.

E.    Compensatory and pecuniary damages and reimbursement for other employment-related losses.

F.    An award of the attorneys' fees and costs incurred in the prosecution of this action and in the administrative OCWR complaints processes that preceded it.

G.    Such other relief as may be appropriate.

## <u>JURY DEMAND</u>

Plaintiff requests a trial by jury of all issues so triable.

Respectfully submitted,

  //s//  Robert C. Seldon, Esq.
Robert C. Seldon, Esq.
  D.C. Bar No. 245100
  rcs@sba-pc.com
Angela St. Pierre, Esq.
  D.C. Bar No. 90003026
  asp@sba-pc.com
Seldon Bofinger & Associates, P.C.
1319 F Street, NW, Suite 200
Washington, DC 20004
(202) 393-8200