UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHERE REXROAT, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No.:   24-3386 (RC) |
| v. | : | |
| | : | Re Document Nos.:   19, 24 |
| ARCHITECT OF THE U.S. CAPITOL, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

GRANTING IN PART AND DENYING IN PART DEFENDANT'S PARTIAL MOTION TO DISMISS

**I.  INTRODUCTION**

Plaintiff Chere Rexroat, a former Chief Engineer in the office of the Architect of the U.S. Capitol ("AOC"), brings this employment action against the AOC alleging four claims based on retaliation, intimidation, sex discrimination, and sex plus age discrimination in violation of the Congressional Accountability Act ("CAA"), 2 U.S.C. §§ 1311, 1317.  Defendant AOC moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss two parts of Rexroat's claims: (1) allegations in all four claims based on the AOC not selecting Rexroat for a promotion through a noncompetitive process, and (2) allegations in her retaliation and intimidation claims based on AOC counsel failing to protect her interests in unrelated litigation in which she participated voluntarily.  For the reasons set forth below, the Court denies Defendant's motion to dismiss as it relates to a noncompetitive selection process, and grants Defendant's motion to dismiss as it relates to the conduct of AOC counsel in unrelated litigation.

## II.  BACKGROUND

The AOC is the largest agency in the Legislative Branch of the federal government and is "charged with preserving and maintaining the landmark and historic buildings, monuments, art, and grounds of the U.S. Capitol campus."  Second Am. Compl. ("SAC") ¶¶ 1, 13, ECF No. 18.  The AOC is headed by the Architect of the Capitol ("the Architect"), followed by the official immediately below, the Deputy Architect.  *Id.* ¶ 4.

"Rexroat is a female in her mid to late 50's."  *Id.* ¶ 2.  She "is a Registered Architect with over 30 years of experience in numerous roles with the Department of Defense, the U.S. Navy, the U.S. Marine Corps and the U.S. Army."  *Id.* ¶ 17.  She joined the AOC as Deputy Chief Engineer in September 2018 and was promoted to Chief Engineer in June 2022.  *Id.* ¶ 16.  She held that position until her "resignation/retirement" on December 31, 2024.  *Id.* ¶¶ 14, 60.

From February 2023 until February 2024, she also served as the Acting Architect.  *Id.* ¶ 15.  During her tenure as Acting Architect, Rexroat served as the deciding official in removing four senior AOC officials who later brought suit to challenge their removals collectively, *Kraft v. Rexroat* ("*Kraft*"), No. 24-mc-32 (D.D.C.),[1] as well as a fifth senior official who is pursuing her claims before the Office of Congressional Workplace Rights ("OCWR"), *Leonard v. Architect of the U.S. Capitol* ("*Leonard*"), No. 24-AC-03 (O.C.W.R.).  *Id.* ¶ 69.

On March 29, 2024, Rexroat filed her own claim with the OCWR alleging, among other wrongs, discrimination based on "her sex and age, disparate pay, and opposition to defendant's unlawful employment practices."  *Id.* ¶ 18.  That dispute remains in active litigation before the OCWR.  *Id.* ¶¶ 2, 78; Pl.'s Opp'n at 6, ECF No. 22.

---

[1] The parties in *Kraft* settled and the case was dismissed with prejudice on December 19, 2025.  Stipulation of Dismissal, *Kraft v. Rexroat*, No. 24-mc-32 (D.D.C. Dec. 18, 2025), ECF No. 34; Min. Order, *Kraft v. Rexroat*, No. 24-mc-32 (D.D.C. Dec. 19, 2025).

Thomas E. Austin, a male in his early 50's, was selected to serve as the Architect on May 22, 2024, and he assumed the duties of his position on June 24, 2024. SAC ¶¶ 4, 41. At all relevant times, he was aware that Rexroat was pursuing her complaint before the OCWR. *Id.*

At the time of Austin's appointment, Rexroat was eligible for noncompetitive selection for the vacant Deputy Architect position due to her grade level, and she expressed her interest in noncompetitive selection for the position to the Chief of Staff for the Architect. *Id.* ¶ 22. He conveyed his support for her noncompetitive selection to Architect Austin before the position was posted. *Id.*

Despite the recommendation, the Deputy Architect position was announced for competition on July 1, 2024. *Id.* ¶ 21. Rexroat applied for the position competitively ten days later. *Id.* ¶ 23. She was rated among the best qualified applicants, and she was interviewed on August 22, 2024. *Id.* ¶¶ 26, 29. At the conclusion of the interview, "the interview panel informed Rexroat that the next step would be a second-round interview with Austin, the selecting official." *Id.* ¶ 30. But Austin never interviewed her. *Id.*

On September 18, 2024, Austin informed Rexroat that he had selected Joseph Campbell for the Deputy Architect position. *Id.* ¶ 32. Campbell is a male who is approximately Rexroat's age. *Id.* ¶ 44. Rexroat alleges that Austin knew she was "markedly and demonstrably more qualified than Campbell for the position of Deputy Architect." *Id.* ¶ 45; *see also id.* ¶¶ 46–49. Austin told Rexroat that he "passed over" her because Austin "knew enough about construction and engineering relating to AOC without having Rexroat as Deputy and selected Campbell . . . because he could complement Austin's . . . experience better than Rexroat." *Id.* ¶ 50. Rexroat alleges that these statements were pretextual. *Id.* ¶ 51.

3

On October 10, 2024, Austin met with Rexroat for "a 90-day review since his on-boarding in June 2024." *Id.* ¶¶ 55–56.  During the 30-minute meeting, "Austin talked belligerently to Rexroat and berated Rexroat on a number of false grounds including, but not limited to, falsely stating that Rexroat was not participating often enough in in-person meetings and that she was not supporting him because she was absent from the office." *Id.* ¶ 56.  Rexroat alleges that these complaints were all pretextual, and that at all relevant times she had performed her duties in an exemplary manner.  *Id.* ¶¶ 56–58.  As a result of this meeting, Rexroat began using her accrued annual leave on October 16, 2024, while seeking other employment.  *Id.* ¶ 59. Rexroat filed her initial Complaint in this action on December 4, 2024.  Compl., ECF No. 1.  The Complaint brought four causes of action based on retaliation and intimidation in violation of the CAA, 2 U.S.C. § 1317, and sex discrimination and sex plus age discrimination in violation of the CAA, 2 U.S.C. § 1311.  *See id.* ¶¶ 65–215.  She ultimately "retired/resigned from AOC effective December 31, 2024, without securing outside employment."  SAC ¶ 60.

Despite her departure from the AOC, Rexroat participated at AOC's request in the *Kraft* litigation, which involved her decision to remove four senior officials.  *Id.* ¶ 70.  Rexroat bases her allegations of the AOC's "failure to protect [her] interests as a client" on her involvement in the *Kraft* and *Leonard* matters.  *See id.* ¶¶ 69–76 (citation modified).  Her involvement has included "voluntarily sitting for a deposition on January 23, 2025," responding "to written discovery," and providing "essential information to AOC counsel."  *Id.* ¶ 70.  Rexroat alleges that she would not have participated in that litigation voluntarily "had she not been led to believe that her interests and those of AOC were aligned, that AOC's counsel was representing her interests diligently and zealously, and that there was no actual or potential conflict between her interests and AOC's."  *Id.* ¶ 71.

In particular, Rexroat was questioned about her non-selection for the Deputy Architect position during her deposition for *Kraft*. *Id.* ¶ 72. Rexroat alleges that during this questioning, AOC counsel failed to advise her of any conflict of interest and "failed to preserve Rexroat's right to review and sign the deposition transcript without conferring with her before it became final." *Id.* Further, "AOC counsel failed to forward the errata sheet, thereby undermining Rexroat's right to review, correct and sign the transcript." *Id.* ¶ 73. The primary transcription error she highlights is that when asked "whether she believed the reasons disclosed to her concerning why she was not selected to the Deputy Architect position," she responded, "I do not, no," but that the reporter transcribed, "I do not know." *Id.*

Rexroat alleges that the AOC insists that she continue to participate in the defense of *Leonard*, another suit based on her conduct as a deciding official. *Id.* ¶ 74. To do so voluntarily, Rexroat requested "copies of all the discovery responses and materials that she and others provided to AOC in the defense of *Kraft* and *Leonard*." *Id.* She was concerned that "not having these materials left her open to impeachment in *Leonard* and could be used to her disadvantage in this case." *Id.* The AOC denied these requests on the basis that "her interests were adverse to AOC's because she had been pursuing her own, unrelated claims against AOC since March 29, 2024." *Id.* ¶ 75. On April 24, 2025, the AOC gave Rexroat a copy of her deposition in *Kraft*, after the 30-day deadline to submit an errata form. *Id.* Three days later, her lawyers sent a written demand to AOC's General Counsel seeking the additional discovery materials. *Id.* ¶ 76. The AOC has not provided Rexroat with any other materials or responded to her request to submit an errata sheet to the court reporter. *Id.* In June 2025, Rexroat amended her Complaint to, among other things, include allegations based on AOC counsel's conduct in the *Kraft* and *Leonard* matters to support her claims of retaliation and intimidation. *See* Mem. P. & A. Supp.

Pl.'s Consent Mot. for Leave to File Am. Compl. at 2–4, ECF No. 18. The operative Complaint otherwise maintains the original four causes of action based on retaliation, intimidation, sex discrimination, and sex plus age discrimination, in violation of the CAA, 2 U.S.C. §§ 1311, 1317. *See* SAC ¶¶ 83–281.

In July 2025, the AOC moved under Rule 12(b)(6) to dismiss two parts of the operative Complaint: (1) allegations in all four claims based on the AOC not selecting Rexroat for the Deputy Architect position through a noncompetitive process, and (2) allegations in her retaliation and intimidation claims based on the AOC failing to protect her interests in the *Kraft* and *Leonard* matters. Def.'s Mem. P. & A. Supp. Part. Mot. to Dismiss ("MTD") at 1, ECF No. 19-1. The motion is fully briefed and ready for the Court's consideration. *See* Pl.'s Opp'n, ECF No. 22; Def.'s Reply, ECF No. 23; Pl.'s Sur-Reply, ECF No. 24-1.[2]

### III. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations, although assumed to be true, must still 'be enough to raise a right to relief above the speculative level.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). Further, courts need not

---

[2] On September 29, 2025, Rexroat filed an unopposed motion for leave to file a three-page sur-reply to respond to arguments she states the AOC raised for the first time in its reply. *See* Pl.'s Unopposed Mot. for Leave to Sur-Reply at 1–2, ECF No. 24. The Court grants Rexroat's unopposed motion. *See Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003).

accept as true conclusory allegations or legal conclusions. *Iqbal*, 556 U.S. at 678, 681. Instead, courts must draw upon their "judicial experience and common sense" to determine whether the "well-pleaded facts" support a reasonable inference rising above the "mere possibility of misconduct" to establish a plausible claim. *Id.* at 679.

### IV. ANALYSIS

The Court first analyzes whether to dismiss Rexroat's allegations that the AOC's failure to select her noncompetitively for the Deputy Architect position constitutes retaliation, intimidation, or discrimination under the CAA. The AOC's reasoning that Rexroat's non-selection through a noncompetitive process could not be unlawful because no one was selected through a noncompetitive process fails as a matter of law and logic, so the Court denies the AOC's motion on this point. The Court then analyzes whether to dismiss Rexroat's allegations that AOC's failure to represent her interests in other litigation adequately constituted retaliation and intimidation under the CAA. Because Rexroat has failed to plausibly plead that the AOC requested Rexroat's participation in other litigation for the purpose of later retaliating against or intimidating her because of her own protected activity, the Court grants the AOC's motion to dismiss as to these post-employment allegations.

### A. Failure to Select Rexroat Noncompetitively

The AOC moves to dismiss all allegations relating to the AOC's failure to select Rexroat noncompetitively for the Deputy Architect position. *See* MTD at 1. Importantly, the AOC's "motion does not presently contest [Rexroat's] ability to proceed with her claims pertaining to Campbell's selection after both [Rexroat] and Campbell competitively applied for the position at issue." *Id.* at 4. Rather, the AOC seeks to avoid litigating whether Rexroat "was entitled to be noncompetitively placed in this position without competition." *Id.* Because the AOC does not

7

seek to dismiss Rexroat's claims based on her non-selection for the Deputy Architect position through a competitive process, the Court sees no reason to limit the scope of her claim and preclude discovery on the preliminary decision of whether a competitive process was warranted to fill the position in the first place.

      The AOC's repeated emphasis that no one was noncompetitively selected for the Deputy Architect position misses the mark. *See* MTD at 8; Def.'s Reply at 4. The AOC argues that "if no comparator was placed in the Deputy Architect position noncompetitively, and the position was in fact filled via a competitive process, . . . then Plaintiff has failed to include any allegations plausibly alleging that she was discriminated, intimidated, or retaliated against regarding the unutilized non-competitive process for the position." MTD at 9. But the AOC cites no authority for such a broad rule, and understandably so. The parties do not dispute that being denied "an opportunity for advancement" can constitute an adverse employment action. *See Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006). And Rexroat was not required to plead a comparator to state a claim. *See, e.g.*, *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005). Assuming for the sake of resolving this motion that Rexroat has plausibly alleged that Architect Austin retaliated, intimidated, or discriminated against her when he did not select her for the Deputy Architect position, *see* MTD at 4, the Court sees no reason why her Complaint would not also plausibly allege that the earlier decision to fill the position through a competitive process was not part and parcel of the same retaliation, intimidation, or discrimination.

      Contrary to the AOC's argument that "Ms. Rexroat does not allege that the Agency considered making a noncompetitive selection and then failed to select her," the operative Complaint contains facts to support just that. *See* Def.'s Reply at 3. Rexroat specifically alleges that she "conveyed her interest . . . in noncompetitive selection to the Deputy Architect position"

8

to the Architect's Chief of Staff and had him convey his support for her noncompetitive selection "to the Architect even before the position was posted." *See* SAC ¶ 22. Thus, it is not a stretch to infer that, based on this information, Architect Austin considered that he *could* noncompetitively select Rexroat for the position but chose not to do so. For example, if Austin was told that he could fill the position noncompetitively by selecting Rexroat, and chose to procced with a competitive process because he did not want a woman in that position, then the AOC would be hard-pressed to argue that the decision not to select Rexroat noncompetitively was not discriminatory, even though no one was selected noncompetitively.

The AOC responds by emphasizing that Rexroat was not "the only individual who would have been eligible to be non-competitively selected." MTD at 9; Def.'s Reply at 1, 4. The AOC, however, does not argue that any other person eligible for noncompetitive selection expressed interest in noncompetitive selection for the role. That is understandable, given the AOC's position that noncompetitive selection "was never contemplated."[3] Def.'s Reply at 4. But as discussed above, Rexroat alleges facts that, accepted as true, establish that she was considered for noncompetitive selection. Those allegations speak only to consideration of Rexroat for noncompetitive selection, and the AOC does not argue that it considered anyone else for noncompetitive selection. If Austin considered only Rexroat for noncompetitive selection, it is unclear why the eligibility of other individuals for noncompetitive selection is material.

Rather, what matters is that Rexroat was not selected for the Deputy Architect position. She alleges that her ultimate non-selection for the position constituted retaliation, intimidation,

---

[3] By insisting that the AOC never contemplated noncompetitive selection, rather than contemplating noncompetitive selection but deeming it unfair to other individuals who were eligible for the position, the AOC is seemingly precluded from later asserting this non-discriminatory reason.

and discrimination. One way she could have been selected was through a noncompetitive process, so the decision to hire through a competitive process was a relevant point in Austin's decision making. That no one else was hired noncompetitively is not fatal to Rexroat's claims in this regard. Accordingly, the Court denies this part of the AOC's motion to dismiss.

### B. Failure to Protect Rexroat's Interests in Other Litigation

Whereas the first part of the AOC's motion to dismiss is based on the Deputy Architect selection process, the second part of the motion challenges conduct from other litigation that occurred after Rexroat's resignation from the AOC. Thus, the Court must decide whether Rexroat has stated a claim based on this post-employment litigation conduct. Ultimately, the Court concludes that Rexroat has failed to plausibly allege that the AOC's actions in unrelated litigation were taken because of her protected activity, and accordingly grants this part of the AOC's motion to dismiss.

As part of her retaliation and intimidation claims under the CAA, Rexroat alleges that the AOC failed to protect her interests in the *Kraft* and *Leonard* matters. *See* SAC ¶¶ 128–39, 184–97. The relevant provision of the CAA states that "[i]t shall be unlawful for an employing office to intimidate, take reprisal against, or otherwise discriminate against, any covered employee because the covered employee has opposed any practice made unlawful by this chapter, or because the covered employee has initiated proceedings, made a charge, or testified, assisted, or participated in any manner in a hearing or other proceeding under this chapter." 2 U.S.C. § 1317(a). Accordingly, to state a claim for retaliation under the CAA, a plaintiff must plead (1) that she engaged in statutorily protected activity; (2) that the defendant took a material adverse action against her; and (3) a causal connection between the two. *See Iyoha v. Architect of the Capitol*, 927 F.3d 561, 574 (D.C. Cir. 2019); *Breiterman v. U.S. Capitol Police*, 15 F.4th

1166, 1172 (D.C. Cir. 2021) ("In previous cases, we have generally assumed that Title VII precedent applies to retaliation claims under the CAA . . . ."). To the extent a claim of intimidation differs, only the second element would be altered—what conduct constitutes intimidation under the CAA. *Cf. Menoken v. Dhillon*, 975 F.3d 1, 9–10 (D.C. Cir. 2020) (differentiating between a failure-to-accommodate claim and an interference claim under the Americans with Disabilities Act, 42 U.S.C. § 12203(b), (c)). Put differently, the intimidation must still occur "because" of the covered employee's protected activity. *See* 2 U.S.C. § 1317(a).

The phrase "covered employee" includes any employee of the Office of the Architect of the Capitol. *Id.* § 1301(a)(3)(F). And the term "employee" also includes former employees. *Id.* § 1301(a)(4). Thus, the parties do not dispute that Rexroat is a covered employee under the statute, nor that her case before the OCWR constitutes a "proceeding under this chapter." *See id.* § 1317(a). The parties do dispute, however, the types of conduct that may constitute retaliation or intimidation under the CAA. *See* MTD at 10–12; Pl.'s Opp'n at 21–24. All appear to agree that such conduct "need not be confined to workplace action so long as 'a reasonable employee would have found the challenged action materially adverse'" and can include post-employment actions. *See Bridgeforth v. Jewell*, 721 F.3d 661, 663 n.* (D.C. Cir. 2013) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); MTD at 11; Pl.'s Opp'n at 21. Regardless of the exact standard, a plaintiff must also allege a "causal link" demonstrating that the adverse action was taken because of the employee's protected activity. *See Iyoha*, 927 F.3d at 547. The Court resolves this motion primarily on the causation element—whether the AOC's alleged actions in unrelated litigation were taken "because" of Rexroat's protected activity.

The Court concludes that Rexroat's pleading is legally deficient because she fails to connect the adequacy of the "representation" she received from AOC counsel to her protected

11

activity.  *See* SAC ¶ 71.  Rexroat pleads that she was the decision maker who removed the five senior AOC officials who brought complaints in *Kraft* and *Leonard*. *Id.* ¶ 69.  Commonsense suggests that AOC was motivated to involve Rexroat in that litigation because she is a key witness whose decision is at issue.  It would make little sense to request her voluntary involvement in those proceedings, where her cooperation could significantly benefit the AOC, for the purpose of retaliating against or intimidating her because of her own pending action.

Rexroat's factual allegations do not support an inference that the AOC requested her participation for the purpose of intimidation or retaliation.  For example, Rexroat alleges that AOC lawyers led her to believe AOC counsel represented her and that her interests were aligned with the AOC's.  *See id.* ¶ 71.  But even accepting those allegations as true, she alleges no facts from which to infer that AOC counsel led her to believe they were her lawyers *because* of her own pending case, as opposed to because of her involvement in firing the senior officials.

Moreover, to the extent Rexroat alleges that AOC lawyers failed to meet their ethical obligations by failing to seek her informed consent and waiver of conflicts of interest, *see* SAC ¶¶ 71–74; Pl.'s Sur-Reply at 1–3, Rexroat fails to plausibly allege that the AOC lawyers' ethical shortcomings were *because* she had a case pending, as opposed to the lawyers failing to foresee that her own case may be a subject of questioning during her *Kraft* deposition.  Even if those lawyers intentionally violated relevant codes of professional conduct, Rexroat would still be required to plead facts supporting that those violations were motivated by a desire to retaliate against or intimidate her, rather than secure her cooperation in those other matters.  She fails to do so.

The Court's analysis changes slightly as to conduct that Rexroat alleges occurred after she became aware of the conflict of interest and was represented by her own counsel.  By no

later than April 2025, Rexroat's counsel had contacted AOC's counsel on her behalf. *See* SAC ¶ 76. At that point, the Court struggles to understand how the AOC could have failed "to protect Rexroat's interests as a client." *See id.* at 16; Pl.'s Sur-Reply at 2. Any misunderstanding regarding whether AOC counsel represented Rexroat as a client in her individual capacity in that litigation was dispelled. Crucially, Rexroat fails to establish her entitlement to the discovery responses and materials of other parties in *Kraft* and *Leonard*, *see* SAC ¶¶ 74–76, so it is at best unclear how AOC's failure to provide Rexroat with those materials to aid her voluntary participation in those cases could serve as the basis of an intimidation or retaliation claim under the CAA, *cf. Menoken*, 975 F.3d at 10 (noting the parties' agreement that the term "interfere" under the ADA could not be "construed so broadly as to prohibit any action whatsoever that in any way hinders a member of a protected class" (citation modified)). The only example of potentially actionable post-employment conduct that the parties brought to the Court's attention involved a former employer providing negative information to a prospective employer, which is in no way analogous. *See Ayo-Aghimien v. Att'y Gen. of U.S.*, No. 24-cv-1341, 2025 WL 407308, at *6 (D.D.C. Feb. 5, 2025). Regardless of the precise limit for stating an intimidation or retaliation claim under the CAA, the Court concludes that Rexroat's allegations relating to this post-employment conduct fall outside it and would not tend to dissuade a reasonable employee from engaging in protected activity. *See Burlington N.*, 548 U.S. at 68.

    Lastly, to the extent Rexroat maintains that the deposition transcript in *Kraft* is inaccurate, and if the AOC attempts to use that testimony against Rexroat in this case, then Rexroat is correct to argue that she can explain the discrepancy between her testimony and the transcript at that time. *See* Pl.'s Sur-Reply at 2–3. But that does not make the AOC's decision not to submit a late errata sheet in unrelated litigation actionable here.

13

In sum, Rexroat's theory boils down to allegations that the AOC tricked Rexroat into participating in *Kraft* and *Leonard* by telling her that they would represent her, in hopes that if she slipped up, they could use her testimony against her, all because she had previously brought her own actions against the AOC. Such a theoretical scheme may be possible, but without greater factual support to buttress this narrative, it does not rise to the level of plausible. Accordingly, the Court grants Defendant's motion to dismiss as to Rexroat's allegations that the AOC failed to protect her interests in other litigation.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss (ECF No. 19) is **GRANTED in part and DENIED in part**; and Plaintiff's Unopposed Motion for Leave to Sur-Reply (ECF No. 24) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 2, 2026                                             RUDOLPH CONTRERAS
                                                                  United States District Judge